IN MATTER OF DISTRIBUTION OF FUNDS OF Y. M. C. A. WAR FUND.

(Decided July 14, 1939.)

*Mr. Harry L. May* and *Messrs. Smith, Francis & Irvine,* for the Union Building and Loan Company.

*Mr. Jesse K. George, Mr. Randall L. Buchanan* and *Mr. Ralph Levinson,* for Argonne Post No. 33, American Legion, Steubenville, Ohio.

*Mr. John J. Griesinger, Jr.,* for Gill Memorial Hospital.

*Mr. Samuel Freifield,* for Armory Board Company F, 112 Medical Regiment, United States National Guard.

*Messrs. Huston, Quinn & Weinman,* for Ohio Valley Hospital.

*Messrs. Kerr & McMaster,* for General Miles Post No. 80, Veterans of Foreign Wars.

*Messrs. Gifford, Woody, Carter & Hays, Messrs. Chalfant & Chalfant* and *Mr. Raymond M. White,* for International Committee of Young Men's Christian Associations.

*Mr. Carl F. Allebaugh,* for the Steubenville Young Men's Christian Association.

*Mr. Lawrence R. Sedgwick,* for Mingo Junction Post No. 351, of the American Legion.

CARTER, J. This cause came into this court on appeal on questions of law and fact. However, at the time of hearing it was decided by counsel for appellant to present the case as an appeal on questions of law only. The notice of appeal may therefore be amended by striking therefrom "and fact" and disposition of the case will be made as an appeal on questions of law.

The action below was instituted by way of interpleader on the petition of the Union Building & Loan Company of Steubenville, Ohio, wherein it is alleged that it held as depository a sum of money in the approximate amount of $18,000, which included an initial deposit of about $7500, the additional amount being accumulations in the way of interest. This de-

posit was made by Marc L. Parsons to the credit of Young Men's Christian Association War Fund, Parsons being at the time the secretary of the Steubenville Young Men's Christian Association. It is further alleged in the petition that there are some conflicting claims for the fund and permission was sought to pay the fund into court. The court, finding that a proper showing had been made for granting the relief prayed for, granted the prayer of the petition, and the money in question was duly turned over to the clerk of the Common Pleas Court of Jefferson county subject to the order of the court.

To this petition numerous intervening answers were filed, setting up claims and making suggestions as to what disposition should be made thereof. These intervenors are as follows: The Young Men's Christian Association of Steubenville; General Miles Post No. 80, Veterans of Foreign Wars; Ohio Valley Hospital; Gill Memorial Hospital; Armory Board of Company F., 112 Medical Regiment, United States National Guard; Argonne Post No. 33; St. Mihiel Post No. 86; Mingo Junction Post No. 351; Gilbert Koontz Post No. 525; Francis McCook Post No. 429; Smithfield Post No. 396; Y. T. R. Post No. 153; Ferdinand Fock Post No. 380, American Legion; all of these intervenors being posts of the American Legion; also the 40 & 8 organization, Local No. 442; and the International Committee of Young Men's Christian Associations.

The prayers of the various intervenors vary. The International Committee of Young Men's Christian Associations prays that it be found to be the sole owner of the fund. The various American Legion organizations pray that the court appoint five trustees to hold the fund intact for the purposes set forth in their intervening answers and for such further and additional relief as may be necessary and proper. The Gill Memorial Hospital prays for an order directing that the money be held in trust for medical and hos-

pitalization expenses of needy veterans of Jefferson county. The Armory Board of Company F., 112 Medical Regiment, prays that its interest be protected. The Ohio Valley Hospital and General Miles Post pray for similar relief as that prayed for by the Gill Memorial Hospital and the Young Men's Christian Association of Steubenville, that its interests be considered upon final distribution. The issue as made by the pleadings and the evidence in the Court of Common Pleas was as follows: Is intervenor, International Committee of the Young Men's Christian Associations, entitled to the fund, and, if not, what disposition should be made thereof?

The cause came on to be heard by the Court of Common Pleas and disposition was made of the fund as follows: The court found upon the issue against all intervenors in the case and dismissed all answers and intervening petitions. The court also made findings of fact and conclusions of law and found as a matter of law that the fund in question constituted a charitable trust; that the objectives and purposes for which this fund was collected have been accomplished; that the original donors to the fund are unknown and that it was the duty of the court to direct the application of the fund under the doctrine of *cy pres,* and that trustees should be appointed to hold the fund now in the possession of the clerk of the court and it ordered, adjudged and decreed that the fund be held in trust for the benefit of all soldiers, sailors and marines of Jefferson county, Ohio, who served or were enlisted in the military and naval service of the United States during the world war ending November 11, 1918, and for the further benefit of such men, women and children of Jefferson county who are now or may become the dependents of such persons; that the principal sum should be invested in such manner as may be authorized for the investment of trust funds under the laws of Ohio or as may be hereafter authorized by the Court

of Common Pleas of this county upon application by the trustees; and that the income from the principal of the trust fund be expended in extending aid to the indigent, medical attention and hospitalization to the sick and injured and in such other humane ways for the benefit of the beneficiaries hereinbefore named, as the trustees or their successors may in their discretion deem proper and advisable; provided further that the principal of the sum may be expended from time to time for any trust purposes as may be decreed by the Court of Common Pleas of Jefferson county. It was further ordered that five trustees of Jefferson county, Ohio, be appointed to administer the fund, consisting of a representative member for the Jefferson County Council of the American Legion, for the Veterans of Foreign Wars of the United States, for the Soldiers' Relief Commission of Jefferson county, for the Jefferson County Bar Association and for the citizens of this county, which trustees were to serve for 2, 4, 6, 8 and 10 years, as designated by the court; that they give bond as fixed by the Common Pleas Court and approved by the court, the premium thereof to be paid out of the income from the fund and that the trustees were to make such reports and receive such compensation as may be determined by the Court of Common Pleas of the county. The court thereupon appointed these trustees, fixed the duration of the term of each and ordered upon the giving of bond that the clerk of the court turn over and deliver the fund to the trustees. Further provision was made in case a vacancy occurred as to the appointment of a successor or successors and ordered the cost of the proceeding to be paid by the trustees out of the principal of the fund.

A motion for a new trial was filed by intervenor, International Committee of the Young Men's Christian Associations of the United States, it being the only intervenor filing such motion. The motion was over-

ruled by the trial court, and appeal by International Committee of the Young Men's Christian Associations only is prosecuted to this court. The bill of exceptions' is voluminous and scores of exhibits were introduced. Was the court in error in thus disposing of the fund? It is urged that the court was in error in this regard and further that the finding was against the manifest weight of the evidence and that the finding of fact was also against the manifest weight of the evidence. The record discloses substantially the following: That about the time or shortly after the United States entered the world war the International Committee of Young Men's Christian Associations concluded that, owing to the nature and magnitude of the work that would be necessary in taking their program to the armed forces in conflict, a special organization should be formed to collect the necessary funds and to conduct the needful work in the army camps at home and abroad, not only among our own soldiers but a part, at least of our allies.

Pursuant to this conclusion, an organization known as the National War Work Council of the Young Men's Christian Association of the United States was organized by the International Committee of Young Men's Christian Associations. This war work council was created to carry on national and international war work. In course of time this organization was completed and campaigns for necessary funds were conducted all over the United States and were known as war fund drives. A group of Steubenville citizens was invited to Cleveland and there conferred with the secretary of the national war work council and arrangements were made for the first campaign for funds in Jefferson county. The quota for the county was fixed at $10,000. This group of men conducted the campaign in Jefferson county, resulting in the raising of a sum of money somewhat in excess of the quota of $10,000. This quota which they were to raise

was remitted to the national war work council. The excess was retained by the committee for use in future drives, if such developed.

During the year 1917 a second campaign for funds was inaugurated and the quota for that campaign was fixed at $40,000. The secretary of this campaign was Marc L. Parsons, who at that time was the secretary of the Young Men's Christian Association of Steubenville. This campaign resulted in an over subscription and collection, the excess amounting to approximately $7500. $40,000, the quota, was forwarded to the national war work council. The excess was retained by the local committee, to aid it in a third drive for funds. The third campaign did not materialize on account of the ending of the war and this excess, amounting to approximately $7500, was deposited in the account as hereinbefore indicated. Many citizens aided in the securing of the subscriptions and collections. The pledge cards used were furnished the local committee by the national war work council and it appears it was generally understood that the campaign was to raise funds to be used in war activities of the national war work council. Many of the donors signed these subscription pledges and some pledges indicated the amount of the pledge without individual names signed thereto. These pledge cards were as follows:

"The National War Work Council of the Young Men's Christian Association of the United States. In consideration of the subscriptions by other subscribers to the fund which is now being raised by the National War Work Council of the Young Men's Christian Association of the United States to provide for the war work of the council among the enlisted men of the United States Army and Navy at home and abroad and also to provide a similar work in the armies of France, Russia, Italy and other allies, and for the prisoners of war work, for a period of nine months ending with June 30, 1918."

"I agree that one-tenth of this pledge shall be apportioned to the war work of the Young Women's Christian Association."

It appears that it was generally understood that one-tenth of the total amount collected would be apportioned to the war work of the Young Women's Christian Association and some cards had such stamped thereon. There is some evidence in the record indicating that it was reported to at least some of the donors that this fund was to be used for the benefit of soldiers and sailors under arms from Jefferson county. As hereinbefore indicated the funds raised locally were deposited in the name of the Young Men's Christian Association War Fund and not the national war work council war fund. The funds were deposited by the local committee through its treasurer, earmarked "Y. M. C. A. War Funds," and it is urged that by reason of the facts hereinbefore recited and the further fact that this fund was deposited "Y. M. C. A. War Fund" that the international committee, successor to National War Work Council of the Young Men's Christian Associations of the United States, intervenor herein, is entitled thereto.

We agree with the lower court that the international committee is not entitled to this fund. However, we do not fully concur in the reasons advanced by the trial court as to why this is so. In the light of the evidence in this case we are of opinion that an agency did exist at least between the war work council and the local committee. The local committee raised its quota in response to a request made by the war work council; the war work council was without question the creature of the international association. However, there is nothing in the pledge cards that indicate that this excess was given in trust or otherwise to the war work council. The local committee had assigned it a fixed quota, which, in the second drive, amounted to $40,000, and no provision was made in the second drive for

the raising of any further funds, as far as the local committee or agency was concerned. Their work was completed when the quota of $40,000 was raised and turned over to the war work council.

As stated by appellant in its brief, at page 7:

"The local committee had no function or duties other than to solicit and collect subscriptions and to transmit them to the national office through the Ohio treasurer at Cleveland, Ohio. It had no powers or duties whatever having to do with the ultimate expenditure of the monies collected."

With this statement we agree as to the quota. This statement clearly indicates that the rights and powers conferred upon the local committee by the war work council were of a special or limited character. As we view it, the excess in no way belonged to or ever became the property of the war work council or the international committee, successor thereto, regardless of the manner in which it was deposited in the bank, and regardless of the relationship created. It therefore becomes immaterial as to what relationship existed between the war work council and the local committee relative to the quota fixed in each campaign, as we are dealing, not with the withholding of a portion of the fund, but an excess raised in addition thereto.

Had the local committee refused to turn over any portion of this quota after raising the same under this arrangement, and, particularly if the war was still in progress, we are satisfied that an action might have been prosecuted, at least by the war work council, compelling such to be done. However, due to the ending of hostilities and due to the fact that this excess raised by the local committee did not in any way belong to the war work council, the local committee was not required to turn this excess over to the war work council, or the international committee, intervenor herein. With this excess the war work council

had no concern. This excess was raised by the local committee as a sort of cushion in case another drive became necessary, which situation did not arise due to the termination of the war. This being true, the donors, if they could have been determined, were entitled to have these contributions returned to them. However, the trial court found such determination to be impossible and therefore applied the *cy pres* doctrine in making disposition of the fund. Where property is given in trust to be applied to a particular charitable purpose and the purpose has been accomplished, the intended charitable trust does not necessarily fail and the court may direct the application of the property under the *cy pres* doctrine. This is true where the purpose has been accomplished, as where a change of circumstances renders the execution impracticable or where the object fails. 10 American Jurisprudence, 675, Section 123 *et seq.*, Restatement of the Law of Trusts, 1208, Section 399.

This money could not be returned to the donors because of the inability to locate and determine them; the Court of Common Pleas, under its equity power, was duly empowered to make application of the doctrine of *cy pres* and the court was not in error in so doing. The court made disposition of the fund as hereinbefore indicated in conformity with this doctrine. No appeal has been prosecuted by any of the other intervenors, they being apparently satisfied with the disposition made of this fund by the court, and inasmuch as the international committee, appellant herein, is not entitled to this fund, of course it is not particularly interested in what disposition is made of it locally. A similar method of handling and controlling a fund somewhat of the kind and character as herein involved was made by this court in a case arising in Trumbull county.

We can conceive of no better way of making disposition of these funds than that indicated by the trial

court in its journal entry, a portion of which has been hereinbefore recited in this opinion.

*Judgment affirmed.*

NICHOLS, P. J., and PHILLIPS, J., concur.